### BELLEFIELD CO. v. CARLTON INVESTING CO.

(Circuit Court of Appeals, Third Circuit. January 3, 1916.)

No. 1941.

1. CORPORATIONS ☞642—FOREIGN CORPORATIONS—"DOING BUSINESS" IN STATE.

Complainant, a Delaware corporation, formed for the purpose of promoting corporations to operate hotels in different parts of the United States, entered into a contract in New York with defendant, which was the owner of a hotel in Pennsylvania, by which it undertook to form a corporation to lease and operate defendant's hotel on terms stated in the contract, which it fully performed. *Held*, that complainant was not doing business in Pennsylvania, within the meaning of Act Pa. April 22, 1874 (P. L. 108), requiring such corporations to register, maintain an office in the state, etc., and that the contract was valid, although it did not register thereunder.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2520–2527; Dec. Dig. ☞642.

For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

2. APPEAL AND ERROR ☞1008—REVIEW—FINDINGS OF FACT.

Where a general judgment for plaintiff is rendered by a federal court, its findings of fact as to special items, like the verdict of a jury, are not subject to review by an appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3955–3960, 3962–3969; Dec. Dig. ☞1008.]

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

---

Action at law by the Carlton Investing Company against the Bellefield Company. Judgment for plaintiff, and defendant brings error. Affirmed.

William M. Hall, of Pittsburgh, Pa., for plaintiff in error.

Hugh M. Hewson, of New York City, and Thomas M. Marshall and Thomas M. Marshall, Jr., both of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, the Carlton Investing Company, a corporation of Delaware, brought suit against the Bellefield Company, a corporation of Pennsylvania, and recovered judgment. The plaintiff claimed to have paid $25,000 to the defendant as earnest money to insure its performance of a written contract between them. It averred full performance by it of such contract, conceded defendant had repaid $10,000 of the earnest money, and claimed it was entitled to a return of the $15,000 unpaid. These facts were not disputed by defendant, but it contended the plaintiff, a foreign corporation, could not maintain this suit by reason of its failure to register under the Pennsylvania statute recited below,[1] and, secondly, that if the suit could be maintained that it was entitled to offset certain expenditures made by it for which it alleged plaintiff was liable. A jury having been waived, the case was tried by a judge, whose opinion and findings of fact and conclusions of law are quoted in part below. In substance, he found the plaintiff was not a corporation doing business in Pennsylvania and held as a conclusion of law that it was not bound to register and could therefore bring suit without registration. He further found the defendant had not proved its claim of expenditures and was not therefore entitled to a set-off. Judgment having been entered for the plaintiff for the full amount of

[1] An act to prohibit foreign corporations from doing business in Pennsylvania, without having known places of business and authorized agents.

Section 1. Be it enacted, etc., that from and after the passage of this act, no foreign corporation shall do any business in this commonwealth, until said corporation shall have established an office or offices and appointed an agent or agents for the transaction of its business therein.

Sec. 2. It shall not be lawful for any such corporation to do any business in this commonwealth, until it shall have filed in the office of the secretary of the commonwealth a statement, under the seal of said corporation, and signed by the president or secretary thereof, showing the title and object of said corporation, the location of its office or offices, and the name or names of its authorized agent or agents therein; and the certificate of the secretary of the commonwealth, under the seal of the commonwealth, of the filing of such statement, shall be preserved for public inspection by each of said agents, in each and every of said offices.

Sec. 3. Any person or persons, agent, officer or employé of any such foreign corporation, who shall transact any business within this commonwealth for any such foreign corporation, without the provisions of this act being complied with, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by imprisonment not exceeding thirty days, and by fine not exceeding one thousand dollars, or either, at the discretion of the court trying the same.

its claim, the Bellefield Company sued out this writ. The somewhat complicated facts of the case are made clear by the following extracts from the court's opinion. The court's recital of the contract and of what the parties did thereunder, is as follows:

"In September of 1910 plaintiff and defendant entered into an agreement in writing, which was executed in the state of New York, whereby defendant agreed to lease the Hotel Schenley in Pittsburgh to a corporation to be formed by the plaintiff, with a capital stock of $50,000, for a term of 20 years from February 1, 1911, for which the tenant was to pay as rental certain fixed sums and the taxes, and also 6 per centum 'on such amount not to exceed' $300,000 'as shall be expended by the Bellefield Company in altering and enlarging the hotel building, and in the decoration and furnishing thereof,' as therein provided, to be paid monthly. Said agreement further provided that defendant should expend $150,000 in enlarging and altering the hotel according to plans and specifications to be agreed upon, and 'a further sum not exceeding' $150,000 'in furnishing and decorating the hotel and the additions thereto according to plans, specifications, and drawings to be furnished by' plaintiff, 'for which, and for such supervision as may be required,' $5,000 'shall be set apart from the amount to be expended for decorating and furnishing.' Such contract further provided that the above expenditures should be upon contracts made by defendant, but if required by plaintiff the defendant should give contracts, if any, for linen and china to some foreign manufacturers. Said contract further provided that plaintiff as 'earnest money' pay to defendant $25,000, to be repaid to plaintiff at the rate of $2,000 per month, beginning February 1, 1911.

"On December 29, 1910, the parties by writing reaffirmed all the conditions of the prior agreement, except as they were changed by the following language: 'If there shall be executed and delivered to the Bellefield Company a sufficient bond or undertaking in writing in the sum of fifty thousand dollars ($50,000), and no more, of a surety company satisfactory to the party of the first part, guaranteeing payment by the tenant of the rent reserved by the proposed lease, the amount which the Bellefield Company agrees to expend for additions, improvements, and alterations as provided in clause third of said agreement shall be two hundred and twenty thousand dollars ($220,000), and the amount to be expended for furnishment shall be one hundred and forty thousand dollars ($140,000). Should the amount so to be expended for construction prove to be more than sufficient to carry out the plans agreed upon as provided in clause third of the said agreement the excess may be expended upon the furnishment. Upon the additional sixty thousand dollars ($60,000) to be expended as herein provided, the tenant shall pay as part of the rent seven per cent. (7%) upon the same terms and conditions as are provided in the said agreement. Any additional amounts required for such alterations, improvements and furnishment shall be provided by the party of the second part, or its successors or assigns.'

"On January 4, 1911, the defendant executed a formal lease directly to plaintiff for the Hotel Schenley in manner and form as contemplated by the previous agreement to be made by the defendant to a corporation to be formed by the plaintiff. That lease recited the material provisions of the former agreements as to expenditures to be made by the lessor for alterations and improvements, and for decorations, etc. It also contained the lessor's covenant to expend $220,000 in enlarging and altering the building, with a provision that 'the lessor shall not be called upon to expend a sum in excess of' that, and a provision that 'any amount expended above that amount shall be borne by the lessee.' It also contain a covenant by the lessor to expend the sum of $140,000 as previously expressed in the other contract.

"On January 31, 1911, the plaintiff assigned the lease to the Ritz-Carlton Restaurant & Hotel Company of Pittsburgh, a corporation of Delaware, duly registered in Pennsylvania, which assignment was made with the consent in writing of the defendant, upon condition that the assignee would assume all the obligations of the lease and deposit with a trustee certain securities as collateral for performance by the assignee. The conditions precedent upon

which such consent was given to the lessor were performed by the assignee, and thereupon the lessor, being the defendant in this case, by writing, released the lessee, being the plaintiff, from liability for rent and from other obligations of the lease, with the provision that 'the agreements of 28th of September and 29th of December, 1910,' should otherwise remain in force.

"On March 23, 1911, the defendant sent to the plaintiff on account of the 'earnest money' advanced by plaintiff according to the agreement of September 28, 1910, the sum of $4,000, covering the months of February and March, 1911. During the following months, down to and including July, $8,000 was paid in equal monthly payments, according to the provisions of the contracts."

[1] Taking up the question of registration first, we find no error in the court's ruling. The application of this statute has been heretofore considered by this court. Pittsburgh Construction Co. v. West Side Belt R. R. Co., 154 Fed. 931, 83 C. C. A. 501, 11 L. R. A. (N. S.) 1145; Colonial Trust Co. v. Montello Brick Works, 172 Fed. 310, 97 C. C. A. 144; Buffalo, etc., Co. v. Penn, etc., Co., 178 Fed. 696, 102 C. C. A. 196. In Buffalo, etc., Co. v. Penn, etc., Co., supra, both the state decisions and the former decisions of this court are collected, analyzed and finally summarized in the conclusion:

"These cases turn upon the question whether the company is exercising its corporate activity in the state, or, in other words, is pursuing here the objects which its charter permits it to accomplish."

In that regard it was there said:

"This court has twice had occasion recently to pass upon the effect to be given to the Pennsylvania statute, and has followed the decisions of the state court by holding that, where a corporation seeks to exercise its charter powers in Pennsylvania, it must first comply with the act. In Pittsburgh Construction Co. v. West Side, etc., Co., 154 Fed. 929 [83 C. C. A. 501, 11 L. R. A. (N. S.) 1145], a West Virginia corporation that was organized to construct railways was denied the right to recover on a construction contract that was entered into three weeks before the company obeyed the statute. And in Colonial Trust Co. v. Montello Brick Works, 172 Fed. 310 [97 C. C. A. 144], it was held that an unregistered Delaware company that was chartered to own the stock and finance the operations of certain Pennsylvania corporations and had exercised its franchises for these purposes was doing business in the state and could not recover upon its contracts made in carrying out its corporate objects."

Tested by the principles there laid down the trial judge below was clearly right in holding the plaintiff company was not doing business in Pennsylvania within the purview of the statute. It was chartered for the purpose of promoting corporations to operate hotels in various parts of the United States. It had no chartered power to operate hotels itself, nor did it attempt to do so. By the contract here in suit it undertook to provide a tenant to lease and operate the defendant's hotel in Pennsylvania. This it did by having chartered and itself capitalizing a foreign corporation with chartered powers to engage in the hotel business. This company duly registered in Pennsylvania, took the lease of defendant's hotel, and carried out the contract obligations of the plaintiff. Such acts as the plaintiff did within the state were temporary and incidental in character; they can in no fair sense be regarded as a doing of business by it in the state, but, on the contrary, their purpose and effect was to create and equip another corporation which by its chartered powers, its registration, and its acts was em-

powered to and actually did in the state all the business which this contract contemplated should be done therein. The plaintiff company was not therefore precluded, by its nonregistration, from bringing this. suit.

[2] Seeing, then, the plaintiff had a right to bring this suit, and that the defendant had contracted to repay the portion of the earnest money sued for, we next inquire whether the defendant has established its right to set off certain expenditures. This is a question of fact and proof, and in that respect the trial judge found:

"At the trial it was not seriously disputed that plaintiff had performed all the conditions precedent to receiving its money back, yet it was strongly urged that plaintiff was liable to defendant for moneys expended by the latter in excess of the requirements of the written contracts. The burden rested upon the defendant to prove this contention, yet the evidence offered by defendant in support of it was very unsatisfactory. There was no satisfactory evidence that the full amount provided for alterations and extensions had been expended, and therefore no evidence that some portion of that amount could not have been used for furnishment and decoration."

The verdict being a general one for the plaintiff, the findings as to special items are, like a verdict of a jury, not the subject of exception or review by this court. Paxson v. Board of Freeholders, 201 Fed. 660, 120 C. C. A. 84.

Finding no error in this record, the judgment below is affirmed.