EASTMAN et al. v. TIGER VEHICLE CO. (No. 7789.)

(Court of Civil Appeals of Texas. Dallas. April 21, 1917. Rehearing Denied May 26, 1917.)

1. COMMERCE ⟐40(1) — "INTERSTATE COMMERCE"—WHAT CONSTITUTES.

A corporation which manufactures goods out of the state, and ships them into the state to a commission agent, by whom they are sold, is engaged in interstate commerce, and not in transacting business in the state, within Rev. St. 1911, art. 1314, requiring licenses from corporations doing business within the state, nor did the unauthorized conversion of the goods by the agent change the character of the transaction.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 29, 30.

For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. COMMERCE ⟐40(1)—INTERSTATE COMMERCE —WHAT CONSTITUTES.

Nor when such corporation shipped vehicles into the state for exhibition at the state fair, where the agent sold and took orders for them, did it engage in intrastate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 29, 30.]

Appeal from District Court, Dallas County; E. B. Meese, Judge.

Action by the Tiger Vehicle Company against Charles Eastman and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Ross M. Scott and W. D. Cardwell, both of Dallas, for appellants. C. M. Smithdeal and E. B. Stroud, Jr., both of Dallas, for appellee.

RASBURY, J. Appellee, a private corporation, secured verdict and judgment in the court below against appellants for $1,097.39, with interest and costs. The sole issue on appeal is the right of appellee to maintain the suit. Appellee's contention is that the

transactions between the parties forming the basis of its suit were interstate commerce. Appellants' contention is that such transactions were intrastate commerce, and, it appearing from the record that appellee had not secured the permit from the state authorities required by article 1314, Rev. Stats. 1911, it was not entitled under succeeding article 1318 to maintain the suit.

The facts disclosed by the record bearing on the issue so raised are without dispute, and are in substance these: Appellants, who are Charles Eastman and B. T. Sneed, and appellee, an Illinois corporation, on August 4, 1914, entered into a contract in writing by which appellee employed appellants to solicit orders for and sell its vehicles in the states of Texas, Louisiana, and Arkansas. Upon all vehicles shipped upon orders secured by appellants, appellee agreed to pay them as compensation 7 per cent. of the invoice price thereof. Any money advanced appellants by appellee for expenses or otherwise was to be repaid, and could be deducted from any commissions or other money due appellants. Either party could terminate the agreement by giving to the other 30 days' written notice thereof. While it is of no controlling force, it is proper to say that appellee advanced appellants $675 under the contract, and that appellee solicited orders from merchants in the state, securing but two, however, one only being approved. While appellants were in Freeport, Ill., presumably reaching an agreement with appellee, it was agreed between them that appellee would ship a car of its vehicles to Dallas for exhibition at the Texas State Fair, appellee to pay all legitimate expenses in that connection, such as floor space, display building, signs, etc. Appellants were to exhibit and sell the vehicles under the terms of the contract, accounting to appellee for the invoice price, plus the freight to Dallas, which was prepaid by appellee. The car of vehicles was shipped and received and placed on exhibition by appellants. The advertising matter at the exhibition arranged by appellants was in the name of Tiger Vehicle Company, Eastman & Sneed agents. Several of the vehicles were sold during the fair, but not delivered until the expiration thereof. Before the fair closed appellee suspended business, of which appellants were notified, and the contract terminated by the notice required thereby. The appellants disposed of all but five of the buggies, which were sequestrated in this suit, and appropriated the proceeds. The invoice price of the buggies, plus the freight and money advanced, less certain credits for expenses and commissions, constitute the verdict and judgment. Appellee did not secure the permit to transact business in Texas required by article 1314, supra.

[1] We conclude this case should be affirmed upon the authority of Miller & Co. v. Goodman, 91 Tex. 41, 40 S. W. 718; Allen v. Tyson-Jones Buggy Co., 91 Tex. 22, 40 S. W.

195 S.W.—22

393; Lasater v. Purcell Mill & Elevator Co., 22 Tex. Civ. App. 33, 54 S. W. 425. In those cases it is declared that a foreign corporation may sue in this state for the price of goods manufactured by it in another state, and sold through its agents in Texas, without complying with article 1314, supra, on the ground that such transaction is interstate commerce, and being so may not be regulated by the state. The only difference in the facts in the instant case and those in the cases cited is that appellee sued his agents for the price of the goods shipped into the state to be sold, but which were appropriated by the agents. Such appropriation by the agents, however, could not change the character of the transaction. It is the transaction and not the unauthorized acts of the agents or others in reference to the property with which the parties are dealing which determines its status. Appellants, by the contract and the course of dealing, were but agents for the sale of appellee's vehicles, which when sold were to be shipped from appellee's factory in Illinois. The fact that the vehicles placed on exhibition at the Texas State Fair were not sold in advance does not affect the character of the transaction, according to Miller v. Goodman, supra.

[2] Appellants argue, however, that the agreement in reference to the exhibition, and the manner in which the vehicles were sold therefrom, changed the transaction from interstate commerce, as contemplated by the contract, to one of intrastate commerce. To support such contention, appellants rely upon Smythe Co. v. Ft. Worth G. & S. Co., 105 Tex. 8, 142 S. W. 1157; Buhler v. E. T. Burrowes Co., 171 S. W. 791; York Mfg. Co. v. Colley, 172 S. W. 206; Imperial Curtain Co. v. Jacob, 163 Mich. 72, 127 N. W. 772. Examination of those cases discloses transactions decidedly distinguishable from those in the present case. Generally, they show a carrying on by the corporation of its business or a portion thereof within the state. The first case cited, which is typical of the others, arose under a contract between a Pennsylvania corporation and a Texas corporation involving the erection of certain gas-producing machinery in the state of Texas, in the accomplishment of which it was necessary for the foreign corporation to employ local labor for a period of five weeks, and to purchase material of considerable cost to be wrought into the plant under the direction of an agent of the corporation on the ground. Such facts, it was declared, constituted in law the transacting of business in the state as distinguished from ordinary interstate commerce, such as the sale and delivery of any given commodity in the state. The facts disclosed by the present case we are constrained to believe fall short of any similarity to those in the cases cited. The only fact which distinguishes the instant case from the ordinary interstate transaction involved in the sale, shipment, and delivery

of merchandise manufactured in one state and sent into another, upon orders solicited by agents, is placing the vehicles on exhibition at the Texas State Fair, which could be sold by appellants under their contract. The most that can be deduced from that circumstance is that it was done in the furtherance of the business of the principal and agent by advertising the commodity. Appellee was not transacting its business at the exhibit. The only business transacted there was the agent's business. Appellee was not selling vehicles there, for it is conceded by appellants that they were doing that under the terms of their employment, which, by the rule in Miller v. Goodman, did not change the interstate character of the transaction. Nor can the payment by appellee of the expenses incurred in arranging for the exhibit serve to change the actual transaction any more than could the payment by appellants of the freight thereon. Each perhaps assumed that the benefits arising from the exhibition would warrant the respective expenditures.

For the reasons stated, the judgment is affirmed.